**Slip Op. 13-87**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**Before: Nicholas Tsoucalas, Senior Judge**

| | |
|---|---|
| APPLETON PAPERS INC., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : Consol. Court No.: 12-00116 <br> UNITED STATES, : <br> : <br> Defendant, : PUBLIC VERSION <br> : <br> and : <br> : <br> PAPER RESOURCES LLC, : <br> : <br> Defendant-Intervenor. : <br> : | |

**OPINION**

**Held:** Plaintiff's motion for judgment on the agency record is denied because the Department of Commerce's final scope ruling is supported by substantial evidence and is otherwise in accordance with the law.

Dated: July 11, 2013

King & Spalding LLP (Gilbert B. Kaplan, Brian E. McGill, and Joseph W. Dorn) for Appleton Papers Inc., Plaintiff.

Stuart F. Delery, Principal Deputy Assistant Attorney General; Jeanne E. Davidson, Director, Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Joshua E. Kurland and Carrie A. Dunsmore); Office of the Chief Counsel for Import Administration, United States Department of Commerce, Whitney Rolig, Of Counsel, for the United States, Defendant.

Greenberg Traurig, LLP (Rosa S. Jeong and Philippe M. Bruno) for Paper Resources LLC, Defendant-Intervenor.

**TSOUCALAS, Senior Judge:** This consolidated action comes

Consol. Court No. 12-00116                                                    Page 2

before the court on plaintiff Appvion, Inc.'s[1] ("Appvion") motion for judgment on the agency record challenging the United States Department of Commerce's ("Commerce") determination in <u>Final Scope Ruling for Paper Resources, LLC's Lightweight Thermal Paper Converted and Packaged in the People's Republic of China Using Jumbo Rolls Produced in a Third Country</u>, Case Nos. A-570-920 and C-570-921 (Mar. 23, 2012), Public Rec. 2/32 ("<u>Final Scope Ruling</u>").[2]  See <u>Preliminary Scope Ruling for Paper Resources, LLC's Lightweight Thermal Paper Converted and Packaged in the People's Republic of China Using Jumbo Rolls Produced in a Third Country</u>, Case Nos. A-570-920 and C-570-921 (Dec. 21, 2011), CR 2/11 ("<u>Preliminary Scope Ruling</u>").  Commerce and defendant-intervenor Paper Resources LLC ("Paper Resources") oppose Appvion's motion.  For the reasons stated below, Appvion's motion is denied.

**BACKGROUND**

Lightweight thermal paper ("LWTP") "is a paper coated with

---

[1] By letter dated June 21, 2013, Appleton Papers Inc. notified the court that it changed its name to Appvion, Inc. on May 13, 2013. See Letter to the Hon. Tina Kimble, Clerk of the Court, re: Appleton Papers Inc. v. United States (June 21, 2013), ECF No. 55.

[2] All citations to the record are from the countervailing duty inquiry (C-570-921).  The record for the antidumping duty inquiry (A-570-920) contains identical documents.  See Def.'s Resp. Pl.'s Mot. J. Agency R. at 2 n.1.  Hereinafter, all documents in the amended public record will be designated "PR" and all documents in the confidential record designated "CR" without further specification except where relevant. Documents listed in parts one and two of the record will be cited as "1/X" and "2/X," respectively, with "X" referring to the document number within that record.

Consol. Court No. 12-00116                                                    Page 3

thermal active chemicals . . . which react to form an image when heat is applied." CR 1/1 at 2. It is "specially intended to be used in special printers containing thermal print heads." Id. "LWTP is typically produced in jumbo rolls that are converted to narrower width rolls appropriate for its specific end uses."[3] Id. Production of LWTP occurs in three stages: (1) manufacturing jumbo rolls ("JRs") of LWTP; (2) applying thermal coating to the JRs; and (3) slitting and repackaging the coated JRs, a process called "conversion." Id. at 3–4.

LWTP from the People's Republic of China ("PRC") is subject to antidumping duty ("AD") and countervailing duty ("CVD") orders. See AD Orders: LWTP From Germany and the PRC, 73 Fed. Reg. 70,959 (Nov. 24, 2008); LWTP from the PRC: Notice of Amended Final Affirmative CVD Determination and Notice of CVD Order, 73 Fed. Reg. 70,958 (Nov. 24, 2008) ("CVD Order," and collectively, the "Orders"). The Orders contain identical scope language, covering:

> certain [LWTP], . . . irrespective of dimensions; with or without a base coat on one or both sides; with thermal active coating(s) on one or both sides that is a mixture of the dye and the developer that react and form an image when heat is applied; with or without a top coat; and without an adhesive backing.

CVD Order, 73 Fed. Reg. at 70,958 (internal footnotes omitted). An explanatory footnote to the scope definition states that "[b]oth jumbo and converted rolls (as well as LWTP in any other form,

---

[3] LWTP's end uses include "ATM receipts, credit card receipts, gas pump receipts, retail store receipts, etc." CR 1/1 at 2.

presentation, or dimension) are covered by the scope of these orders." Id. at 70,958 n.1.

Paper Resources imports LWTP that is manufactured in JR form and coated in [[    ]] then is converted in the PRC by Shanghai Hanhong Paper Company ("Hanhong"). See PR 2/1 at 1. In February 2011, Paper Resources requested that Commerce determine that LWTP manufactured in this fashion is outside the scope of the Orders because its country of origin is not the PRC. CR 1/1 at 1, 4-10. Commerce initiated a scope inquiry in April 2011. See PR 1/9 at 1.

In the Preliminary Scope Ruling, Commerce found that Paper Resources's LWTP was outside the scope of the Orders because its country of origin was not the PRC. CR 2/11 at 11-12. Using its substantial transformation analysis, Commerce concluded that the conversion process was insufficient to change the country of origin of [[    ]] JRs because (1) JRs and converted rolls were of the same class or kind of merchandise; (2) conversion operations required only "minimal" capital investment and expertise; and (3) conversion did not alter the JRs' end use, mechanical properties, or essential characteristic. See id. at 6-12. Commerce also declined to include an anti-circumvention inquiry in its country of origin analysis. Id. at 13-15.

Commerce upheld the results of its preliminary determination in the Final Scope Ruling. See PR 2/32 at 3-4. Additionally, Commerce declined Appvion's request to impose a mandatory country

of origin certification program on Hanhong and Paper Resources because it did not first make an affirmative determination that either party circumvented the Orders. Id. at 6.

Appvion challenges Commerce's scope determination and the decision not to impose a mandatory country of origin certification program. See Pl.'s Br. Supp. Mot. J. Agency R. at 2-4 ("Pl.'s Br."). The court held oral argument on June 27, 2013. Oral Argument, Appleton Papers Inc. v. United States, Consol. Ct. No. 12-00116 (Ct. Int'l Trade June 27, 2013) ("Oral Arg.").

## JURISDICTION

The Court has jurisdiction over this matter pursuant to section 516A(a)(2)(B)(vi) of the Tariff Act of 1930 (the "Act"),[4] as amended, 19 U.S.C. § 1516a(a)(2)(B)(vi) (2006), and 28 U.S.C. § 1581(c).

## STANDARD OF REVIEW

This Court must uphold Commerce's scope determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Huaiyin Foreign Trade Corp. (30) v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting Consol. Edison Co. v.

---

[4] All further references to the Act will be to the relevant provisions of Title 19 of the United States Code, 2006 edition, and all applicable supplements thereto.

**Consol. Court No. 12-00116**                                                                                       **Page 6**

NLRB, 305 U.S. 197, 229 (1938)).  This Court grants "significant deference to Commerce's interpretation of its own orders," Allegheny Bradford Corp. v. United States, 28 CIT 830, 842, 342 F. Supp. 2d 1172, 1183 (2004), "[h]owever, Commerce cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1095 (Fed. Cir. 2002) (citing Eckstrom Indus., Inc. v. United States, 254 F.3d 1068, 1072 (Fed. Cir. 2001)).

"Courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion." Wheatland Tube Co. v. United States, 161 F.3d 1365, 1369 (Fed. Cir. 1998).  "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represent an unreasonable judgment in weighing relevant factors."  WelCom Prods., Inc. v. United States, 36 CIT __, __, 865 F. Supp. 2d 1340, 1344 (2012) (citing Star Fruits S.N.C. v. United States, 393 F.3d 1277, 1281 (Fed. Cir. 2005)).  "[A]n agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently."  SKF USA Inc. v. United States, 263 F.3d 1369, 1382 (Fed. Cir. 2001).

## DISCUSSION

Appvion does not argue that the conversion process in the PRC substantially transformed the [[    ]] JRs. Oral Arg. at 14:05; see CR 2/8 at 6 ("Paper Resources is correct that [Appvion] does not contend that the converting operations are sufficient to transform [JRs]."). Instead, Appvion argues that Paper Resources's LWTP is subject merchandise because the Orders cover all LWTP converted in the PRC. Pl.'s Br. at 12-15. Accordingly, Appvion insists it was inappropriate for Commerce to conduct a substantial transformation analysis. Id. at 20. Appvion also argues that Commerce abused its discretion by declining to consider evidence of circumvention in its scope ruling. See id. at 22-26. Finally, Appvion contends that Commerce's failure to impose a mandatory country of origin certification program was arbitrary, capricious, and an abuse of discretion. See id. at 27-30.

### I. Commerce's Interpretation of the Scope Language

Appvion argues that the Orders cover all LWTP converted in the PRC, regardless of the origin of the underlying JRs. Id. at 13. According to Appvion, Commerce abused its discretion by using the substantial transformation test to "preclude[] relief for a portion of subject merchandise," namely, LWTP converted in the PRC using JRs from a third country. Id. at 20. However, Appvion fails to demonstrate that Commerce altered the scope of the Orders or misapplied the substantial transformation test.

"'Commerce cannot interpret an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms.'" King Supply Co. v. United States, 674 F.3d 1343, 1348 (Fed. Cir. 2012) (quoting Walgreen Co. v. United States, 620 F.3d 1350, 1354 (Fed. Cir. 2010)). "While the petition, factual findings, legal conclusions, and preliminary orders can aid in the analysis, they cannot substitute for the language of the order itself, which remains the 'cornerstone' in any scope determination." Walgreen, 620 F.3d at 1357 (citing Duferco Steel, 296 F.3d at 1097). Therefore, it is the "explicit terms" of an order that "must control [Commerce's] subsequent decisions in scope rulings." Gleason Indus. Prods., Inc. v. United States, 31 CIT 393, 398 (2007) (not reported in the Federal Supplement) (citing Duferco Steel, 296 F.3d at 1096–97).

Appvion cannot demonstrate that Commerce unlawfully altered the scope of the Orders. AD and CVD orders cover a particular class or kind of merchandise from a particular country. See 19 U.S.C. §§ 1671, 1673; Ugine & ALZ Belg., N.V. v. United States, 31 CIT 1536, 1550, 517 F. Supp. 2d 1333, 1345 (2007) ("Commerce's [AD] and CVD orders must specify both the class or kind of merchandise and the particular country from which the merchandise originates."), aff'd after remand, 551 F.3d 1339 (Fed. Cir. 2009). The Orders state that "[b]oth jumbo and converted rolls . . . are covered by the scope of these orders." CVD Order, 73 Fed. Reg. at

**Consol. Court No. 12-00116**                                                                                                  **Page 9**

70,958 n.1. Accordingly, the Orders cover JRs and converted rolls of Chinese origin. Ugine, 31 CIT at 1550, 517 F. Supp. 2d at 1345. The scope definition simply does not address whether LWTP converted in the PRC using JRs from a third country is subject merchandise. Because it did not alter the plain meaning of the Orders, Commerce's decision to conduct a country of origin analysis was reasonable.[5] See id. at 1551, 517 F. Supp. 2d at 1345 ("[I]f merchandise does not meet one of the parameters — either class or kind, or country of origin — it is outside the scope of the [AD] or CVD order.").

Appvion also argues that Commerce abused its discretion by using the substantial transformation analysis to exclude otherwise subject LWTP from the scope of the Orders. Pl.'s Br. at 20. According to Appvion, application of the substantial transformation test, and specifically the change in class or kind factor, is improper in cases where the scope covers upstream and downstream

---

[5] Appvion also argues that Commerce's interpretation of the scope language does not reflect the intent of the petition, as it intended the Orders to cover all LWTP converted in the PRC when drafting the proposed scope language. See Pl.'s Br. at 15. However, Appvion does not identify any evidence in the record supporting this assertion. See Pl.'s Br. at 15; PR 2/32 at 4 ("[T]here was no specific discussion during the investigation of LWTP, in either the AD or CVD segments, as to whether JRs produced in a third-country and converted in the PRC would be subject to the [Orders]."); cf. Minebea Co. v. United States, 16 CIT 20, 22–24, 782 F. Supp. 117, 120–121 (1992) (Tsoucalas, J.) (finding that the an order covered certain products not explicitly mentioned in the scope definition where petition and numerous post-petition submissions evidenced petitioner's intent to include those products within the scope), aff'd, 984 F.2d 1178 (Fed. Cir. 1993).

forms of a product and manufacturing occurs across multiple countries. Id. In such cases, Appvion contends, the downstream processing "inherently cannot be sufficient to move the merchandise from one class or kind to another," and always indicates that a substantial transformation did not occur. Id.

Appvion admitted before Commerce and the court that conversion was not a substantial transformation. See CR 2/8 at 6; Oral Arg. at 14:05. To the extent that Appvion is challenging the propriety of Commerce's use of the substantial transformation analysis, however, this argument is unconvincing. This Court has upheld Commerce's use of the substantial transformation analysis as a means of determining the country of origin of merchandise produced in multiple countries. See E.I. DuPont de Nemours & Co. v. United States, 22 CIT 370, 373-76, 8 F. Supp. 2d 854, 858-59 (1998) (applying Chevron deference to the substantial transformation test). The substantial transformation test "provides a yardstick for determining whether the processes performed on merchandise in a country are of such significance as to require that the resulting merchandise be considered the product of the country in which the transformation occurred." Id. at 373-74, 8 F. Supp. 2d at 858. This is precisely the analysis that Commerce undertook below with regards to the conversion process. See CR 2/11 at 6-12; PR 2/32 at 3-4. As the JRs from [[    ]] were not substantially transformed in the PRC, they were not of Chinese origin. See DuPont, 22 CIT at

373-74, 8 F. Supp. 2d at 858. Accordingly, Paper Resources's LWTP was never subject merchandise. See Ugine, 31 CIT at 1551, 517 F. Supp. 2d at 1345.

Ultimately, Appvion's argument boils down to its claim that the Final Scope Ruling denies relief from dumped LWTP from the PRC. Pl.'s Br. at 15. Appvion insists that Commerce's determination forces the filing of numerous petitions against any and all countries from which Hanhong sources its JRs. See id. at 15. According to Appvion, this result is unreasonable because relief may be denied if fair trade practices mask dumping or total import volume does not surpass negligibility thresholds. Id. at 15-17. As Commerce did not articulate a "statutorily consistent mechanism" by which Appvion can obtain relief, Appvion insists that Commerce's decision is erroneous. Id. at 15.

Appvion simply fails to articulate a legal basis by which to determine that Paper Resources's LWTP is within the scope of the Orders. Commerce was not required to include the LTWP within the scope of the Orders simply because it was converted by Hanhong. See DuPont, 22 CIT at 375, 8 F. Supp. 2d at 859 ("[A]ntidumping orders apply to merchandise from particular countries, not individual producers . . . ."). Rather, the dispositive issue was the country of origin. See Ugine, 31 CIT at 1551, 517 F. Supp. 2d at 1345. And, as stated above, the country of origin of Paper Resources's LWTP was [[    ]], not the PRC.

## II. Circumvention

Appvion also argues that Commerce abused its discretion by failing to consider evidence that Hanhong and Paper Resources were circumventing the Orders. See Pl.'s Br. at 22-26. According to Appvion, Hanhong's "shift to third-country suppliers represents a change in the commercial practices (e.g., pattern of trade) indicating circumvention of existing relief." Id. at 23. Appvion insists that Commerce also should have considered the following evidence: Hanhong and Paper Resources waited three years to request a scope ruling from Commerce; Paper Resources [[

]]; Hanhong and Paper Resources [[

]]; and Hanhong [[

]]. See Pl.'s Br. at 23-26.

Generally, Commerce addresses circumvention issues under 19 U.S.C. § 1677j, which grants it the power to include merchandise within the scope of an order where that merchandise is of the same class or kind as the covered merchandise and a large portion of the merchandise's value is derived from production in a covered country, but minor downstream processing or assembly occurs in the U.S. or a third country. See 19 U.S.C. § 1677j. Additionally, Commerce has discretion to consider evidence of circumvention as part of a country of origin analysis. See Issues and Decision Memorandum for the Less-Than-Fair-Value Investigation of Certain

Artist Canvas from the PRC at 7, Case No. A-570-899 (Mar. 22, 2006) (recognizing that Commerce "may consider" the potential for circumvention of an order in its country of origin analysis). Commerce's discretion is not unlimited, however, as it may not use circumvention evidence to expand the scope of an order. E. Jordan Iron Works, Inc. v. United States, 32 CIT 419, 422, 556 F. Supp. 2d 1355, 1358 (2008).

Here, Commerce declined to consider evidence of circumvention for several reasons. See CR 2/11 at 13-15. First, Commerce explained that the Orders did not cover [[    ]], the country in which the JRs are produced, and therefore there was no concern that relief under the Orders would be "eviscerated by moving minor processing outside the country covered by the order." Id. at 14. Second, Commerce noted that the case did not lend itself to a section 1677j analysis because downstream processing occurred in the covered country rather than in the U.S. or a third country. Id. at 14-15. Commerce also noted that this Court previously upheld scope determinations conducted without considering evidence of circumvention. Id. at 15.

Commerce's decision was adequately explained and consistent with the law. This Court has held that "a 'scope ruling is not the proper mechanism for addressing circumvention concerns.'" See Laminated Woven Sacks Comm. v. United States, 34 CIT __, __, 716 F. Supp. 2d 1316, 1328 (2010) (Tsoucalas, J.) (quoting E. Jordan Iron

Works, 32 CIT at 422, 556 F. Supp. 2d at 1358). Moreover, because conversion did not substantially transform the [[     ]] JRs, CR 2/11 at 6-12 (unchanged in PR 2/32), Commerce risked expanding the scope of the Orders by considering evidence of potential circumvention. See E. Jordan Iron Works, 32 CIT at 422, 556 F. Supp. 2d at 1358. Accordingly, Appvion cannot demonstrate that Commerce abused its discretion.

### III. Country of Origin Certification

Finally, Appvion argues that Commerce's failure to impose a mandatory country of origin certification program was arbitrary, capricious, and an abuse of discretion. See Pl.'s Br. at 27. Appvion insists that Commerce ignored evidence in the record evidencing a "high likelihood of past and current circumvention." Id. Appvion also argues that Commerce failed to explain why it treated the instant case differently than other cases in which it imposed country of origin and end-use certification programs without an affirmative finding of circumvention. Id. at 28-30.

Commerce has a certain amount of discretion to act in order to "prevent[] the intentional evasion or circumvention" of the Act. See Tung Mung Dev. Co. v. United States, 26 CIT 969, 979, 219 F. Supp. 2d 1333, 1343 (2002), aff'd, 354 F.3d 1371 (Fed. Cir. 2004). To that end, Commerce may impose measures such as mandatory certification programs where it believes they will be effective in preventing future circumvention of its orders. See, e.g., Issues

and Decision Memorandum for the Final Determination of the Anticircumvention Inquiry of Certain Tissue Paper Products from the PRC at 9-12, Case No. A-570-894 (Sept. 19, 2008) (imposing country of origin certification requirements to address circumvention).

Appvion fails to demonstrate that Commerce abused its discretion or acted in an arbitrary and capricious manner.  First, this Court has held that "certification is not part of an ordinary scope analysis."  Laminated Woven Sacks, 34 CIT at __, 716 F. Supp. 2d at 1328.  Second, Commerce adequately explained its decision. In the Preliminary Scope Ruling, Commerce explained that Appvion's country of origin concerns could be "appropriately dealt with by [Customs and Border Protection]."  CR 2/11 at 6.  In the Final Scope Ruling, Commerce did not impose a country of origin certification program because it did not make an affirmative finding of circumvention.  See PR 2/32 at 6.  As Commerce explained, there was "no precedent of [Commerce] establishing a certification program to preempt unfounded circumvention."[6]  Id. Commerce also noted that end-use certification cases are not

---

[6] Appvion argues that Commerce's decision was inconsistent with Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the PRC: Preliminary Determination of Sales at Less Than Fair Value, Postponement of Final Determination and Affirmative Preliminary Determination of Critical Circumstances, 77 Fed. Reg. 31,309 (May 25, 2012) ("Silicon Cells"), in which it imposed country of origin certification without an affirmative finding of circumvention. Pl.'s Br. at 28. To the extent that Silicon Cells altered Commerce's policy, it is not relevant here because it was issued after the Final Scope Ruling. Silicon Cells, 77 Fed. Reg. at 31,309.

**Consol. Court No. 12-00116**                                                                 **Page 16**

relevant because they involve different concerns — "avoid[ing] liquidation of components intended to be used for subject merchandise." Id. Because Commerce provided a "reasoned analysis" of its decision, the court finds that Commerce neither abused its discretion nor acted in an arbitrary and capricious manner. See Wheatland Tube, 161 F.3d at 1369.

## CONCLUSION

For the foregoing reasons, the court finds that the Final Scope Ruling is supported by substantial evidence on the record and is otherwise in accord with the law.

                                                                    /s/ Nicholas Tsoucalas
                                                                 **Nicholas Tsoucalas
                                                                     Senior Judge**

Dated: July 11, 2013
       **New York, New York**